UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BALLY PRODUCE CORP.,

          Plaintiff,

    -against-

LONG DENG and MING ZHE ZHANG,

          Defendants.
-------------------------------------------------------X

REPORT AND
RECOMMENDATION
23 CV 6580 (ENV)(RML)

LEVY, United States Magistrate Judge:

     By order dated February 23, 2024, the Honorable Eric N. Vitaliano, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation.  For the reasons explained below, I respectfully recommend that the motion be granted.

## BACKGROUND AND FACTS

     On September 1, 2023, plaintiff Bally Produce Corporation ("plaintiff" or "Bally Produce") commenced this action against Long Deng[1] and Ming Zhe Zhang ("defendant") seeking to enforce statutory trust rights under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA") and collect PACA trust assets belonging to plaintiff in the principal amount of $52,457.40, plus interest, attorney's fees, and costs.  (Complaint, dated Sept. 1, 2023 ("Compl."), Dkt. No. 1, ¶¶ 1, 4, 6, 29.)

---

[1] Long Deng was dismissed from the action pursuant to a stipulation of discontinuance.  (See Order Dismissing Parties, dated Dec. 4, 2023, Dkt. No. 9; see also Supplement Affirmation in Support of Request for Default Judgment, dated May 3, 2024, Dkt. No. 15, ¶ 2 ("Long Deng was subsequently dropped from this lawsuit when sufficient proof was provided to my office that he was not responsible for the debt.").)

Plaintiff is a New York corporation that buys and sells wholesale quantities of agricultural commodities ("produce") in interstate commerce, with its principal place of business in Maspeth, New York. (Id. ¶ 3.) At all times relevant to this case, plaintiff was subject to and licensed under the provisions of PACA as a dealer. (Id.) Defendant is a resident of New York and an owner and/or manager of New Ming Inc. (Id. ¶¶ 5, 7.) The complaint alleges that, between January 25, 2022 and February 18, 2022, plaintiff sold to New Ming Inc. $89,153.20 worth of wholesale quantities of produce. (Id. at 2, ¶ 5.) Plaintiff alleges that New Ming Inc. failed to fully pay for the produce when payment was due despite repeated demands and presently owes plaintiff $52,057.40, subject to an ultimate determination by the United States Bankruptcy Court for the District of Massachusetts, Eastern Division, where New Ming Inc. filed for Chapter 7 bankruptcy protection. (Id. ¶ 6.)[2]

Plaintiff alleges that, at the time of the receipt of the produce by defendant, plaintiff became a beneficiary in a statutory trust designated to assure payment to produce suppliers. (Id. ¶ 8.) The trust consists of all produce or produce-related assets, including all funds commingled with funds from other sources and all assets procured by such funds, in the possession or control of defendants since the creation of the trust. (Id.) Plaintiff preserved its interest in the PACA trust in the aggregate amount of $52,057.40 by sending invoices to defendant containing the language required by 7 U.S.C. § 499e(c)(4). (Id. ¶ 9.) Plaintiff alleges that defendant does not dispute the debt and in fact acknowledged it by making partial payments. (Id. ¶ 10.) Finally, plaintiff alleges that defendant's failure, inability, and refusal to pay plaintiff shows that defendant is failing to maintain sufficient assets in the statutory trust to pay plaintiff and is dissipating trust assets. (Id. ¶ 11.) Furthermore, defendant executed a written personal

_____

[2] Plaintiff alleges that New Ming Inc. has filed for Chapter 7 bankruptcy protection. (Compl. ¶ 6.)

guaranty of New Ming Inc.'s obligations to plaintiff. (See Guaranty, attached as Ex. C to the Motion for Default Judgment, filed Feb. 22, 2024, Dkt. No. 14-5.)

The summons and complaint were served on defendant on October 26, 2023. (See Affidavit of Service of Martin Friedman, sworn to Oct. 27, 2023, Dkt. No. 7.) No answer or other responsive pleadings were filed by defendant. On January 9, 2024, plaintiff requested a certificate of default as to defendant pursuant to Federal Rule of Civil Procedure 55(a). (Request for Certificate of Default, dated Jan. 8, 2024, Dkt. No. 10.) On January 16, 2024, the Clerk of the Court noted defendant's default. (See Certificate of Default, dated Jan. 16, 2024, Dkt. No. 11.) On February 22, 2024, plaintiff filed and served the instant motion for default judgment against defendant. (Motion for Default Judgment, filed Feb. 22, 2024 ("Default Mot."), Dkt. No. 14; Affidavit of Service of Sheila Eymold, sworn to Feb. 22, 2024, Dkt. No. 14-6.) Defendant has not opposed or otherwise responded to the motion.

## DISCUSSION

### A.  Default Judgment

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant, and the defendant fails to appear to move or set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

In order to grant a default judgment, the court must ensure that the plaintiff took all of the required steps in moving for default judgment, including providing proper notice to

3

defendants of the lawsuit.  As discussed above, plaintiff has demonstrated that it properly served

defendant by leaving a copy of the summons and complaint at defendant's dwelling or usual

place of abode with someone of suitable age and discretion who resides there.  (See Affidavit of

Service of Martin Friedman, sworn to Oct. 27, 2023, Dkt. No. 7); see also FED. R. CIV. P.

4(e)(2)(B).  After defendant failed to answer the complaint, plaintiff obtained a certificate of

default and properly moved for default judgment.  See FED. R. CIV. P. 55; City of New York v.

Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011).  Plaintiff then served the Motion

for Default Judgment and accompanying papers in compliance with Local Rule 55.2(c).  (See

Affidavit of Service of Sheila Eymold, sworn to Feb. 22, 2024, Dkt. No. 14-6.)  Accordingly, I

find that plaintiff took all of the required steps and that the Clerk of the Court's entry of default

against defendant was proper.

###  B.  Liability

An entry of default alone is insufficient to establish liability, "since a party in

default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1

Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct.

23, 2007) (citation omitted).  As such, a court must determine whether the allegations establish

liability as a matter of law.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).  In

deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's]

factual allegations as true and draw all reasonable inferences in its favor."  Id.  A defendant's

default is considered an admission of all well-pleaded allegations of liability.  Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  The plaintiff,

however, bears the burden of demonstrating that the unchallenged facts and all reasonable

inferences drawn from the evidence establish the defendant's liability on each asserted cause of

action.  See Mickalis Pawn Shop, 645 F.3d at 137; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d

61, 65 (2d Cir. 1981).

Plaintiff argues that defendant is liable under PACA § 499e(c) for failing to pay

for produce purchased from plaintiff.  (See Memorandum of Law in Support of the Motion for

Default Judgment, dated May 3, 2024 ("Pl.'s Mem."), Dkt. No. 16, at 1.)  PACA was enacted "to

regulate the interstate sale and marketing of perishable agricultural commodities."  Coosemans

Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007).  The statute gives sellers of

agricultural produce "a self-help tool" to ensure they can "protect themselves against the

abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of

fruits and vegetables."  Id. (quotations omitted).  Section 499e(c) "requires licensed dealers to

hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust

for the benefit of unpaid sellers" until full payment is made.  Am. Banana Co. v. Republic Nat'l

Bank of New York, N.A., 362 F.3d 33, 37 (2d Cir. 2004); see also 7 U.S.C. § 499e(c)(2).  "[T]he

trust is formed at the moment the produce is shipped to the buyer" and it is "intended exclusively

to benefit produce suppliers."  G & P Warehouse, Inc. v. Cho's Church Ave. Fruit Mkt., No. 15

CV 6174, 2016 WL 5802747, at *4 (E.D.N.Y. Aug. 12, 2016) (quotations and citation omitted).

"The creation of the trust establishes a fiduciary obligation to repay the full amount of the debt

owed to the PACA beneficiary and protects sellers from the risk of default by buyers."  Higueral

Produce, Inc. v. CKF Produce Corp., No. 18 CV 6760, 2019 WL 5694079, at *5 (E.D.N.Y. Aug.

16, 2019) (quotations and citations omitted), report and recommendation adopted as modified,

2019 WL 5693798 (E.D.N.Y. Sept. 30, 2019).

To establish a violation of Section 499e(c) and recover proceeds from a PACA-

created trust, a plaintiff must demonstrate the following five elements:

(1) The commodities sold were perishable agricultural commodities;
(2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker;
(3) the transaction occurred in interstate or foreign commerce;
(4) the seller has not received full payment on the transaction; and
(5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.

New Son Yeng Produce N.Y. LLC v. New A & N Food Mkt., Inc., No. 13 CV 5012, 2014 WL 3725874, at *4 (E.D.N.Y. July 25, 2014) (quoting A & J Produce Corp. v. Chang, 385 F. Supp. 2d 354, 358 (S.D.N.Y. Apr. 4, 2005)).

Plaintiff has satisfied the five elements required to establish a violation of Section 499e(c).  First, the items sold were perishable agricultural commodities.  PACA defines "perishable agricultural commodities" as "[f]resh fruits and fresh vegetables of every kind and character[,]" whether or not they are "frozen or packed in ice[.]"  7 U.S.C. § 499a(b)(4)(A). Plaintiff sold wholesale quantities of fruit and vegetables to defendant between January 25, 2022 and February 18, 2022.  (Compl. ¶ 5; Invoices, attached as Ex. B to the Default Mot., Dkt. No. 14-4.)

Second, New Ming Inc., the purchaser, was a licensed dealer under PACA at the time of the transactions at issue.  A "dealer" is described as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce."  7 U.S.C. § 499a(b)(6). Although plaintiff does not specifically allege that New Ming Inc. was a "dealer" as defined by PACA, the facts alleged by plaintiff support such a conclusion.  (See, e.g., Compl. ¶ 5 ("Plaintiff sold to New Ming Inc. [] $89,153.20 worth of wholesale quantities of produce which had been moved in interstate commerce[.]").)  Furthermore, the court's online search of the United States

6

Department of Agriculture's PACA License Database confirmed that New Ming Inc. was licensed under PACA but is now in bankrupt status.  See https://perma.cc/55Z4-QN3Q.

Instead of New Ming Inc., plaintiff seeks to hold defendant Ming Zhe Zhang liable for the cost of the produce purchased by New Ming Inc.  (See Levinson Aff. ¶ 6; Lo Aff. ¶ 3; Supplemental Affirmation in Support of Request for Default Judgment, dated May 3, 2024 ("Supp. Aff."), Dkt. No. 15, ¶ 3.)  "A PACA trustee's primary duty is to 'maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities.  Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA].'" D.M. Rothman & Co. v. Korea Commercial Bank of New York, 411 F.3d 90, 93-94 (2d Cir. 2005) (quoting 7 C.F.R. § 46.46(d)(1)).  "An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty."  Coosemans Specialties, 485 F.3d at 705; see also Chiquita Fresh N. Am., LLC v. Fierman Produce Exch. Inc., 198 F. Supp. 3d 171, 175 (E.D.N.Y. 2016), adhered to, 2016 WL 11795224 (E.D.N.Y. Nov. 30, 2016) (corporate defendants filed separate petitions for Chapter 11 bankruptcy relief in the Eastern District of New York, which placed in effect an automatic stay of the proceedings as against them, but case was not stayed against non-debtors/owners of the corporate defendants).

Because PACA creditors hold an equitable interest in the PACA trust pending payment, "the Bankruptcy Code excludes PACA trust assets from the bankruptcy estate."  Tom Lange Co. v. Kornblum & Co., 81 F.3d 280, 284 (2d Cir. 1996) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10 (1983) (explaining that the Bankruptcy Code "plainly exclude[s from the bankruptcy estate] property of others held by the debtor in trust at the time of

the filing of the [bankruptcy] petition")).  Consequently, PACA "gives unpaid [produce] suppliers . . . priority over secured lenders . . . to PACA trust assets."  Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 615 (2d Cir. 1998); see also PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc., 913 F.3d 268, 276 (2d Cir. 2019) (same).

Plaintiff alleges that defendant was an "owner[] and/or manager[] of New Ming." (Compl. ¶ 7.)  In support of its allegations, plaintiff submits a written personal guaranty of all New Ming Inc.'s obligations to plaintiff that is signed by defendant.  (See Guaranty.)  Plaintiff further alleges that defendant's "failure, inability and refusal to pay Plaintiff shows that Defendant[] [is] failing to maintain sufficient assets in the statutory trusts to pay Plaintiff and [is] dissipating trust assets."  (Compl. ¶ 25; see also Pl.'s Mem. at 8.)  Furthermore, the court's online search of the United States Department of Agriculture's PACA License Database revealed that "Ming Zhang" was the reported principal of New Ming Inc. on its PACA license.  See https://perma.cc/55Z4-QN3Q.

Accepting plaintiff's allegations as true and considering the documentary evidence, it appears that defendant had control over New Ming Inc.'s trust assets and breached his fiduciary duty as a PACA trustee.  Therefore, I find that defendant is personally liable for the failure to preserve PACA trust assets for plaintiff's benefit.  See S. Katzman Produce Inc. v. Yadid, 999 F.3d 867, 875-76 (2d Cir. 2021) ("under PACA [a]n individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty.") (internal quotation marks and citation omitted); see also Marchella of NY Inc. v. Mejia Tropical Prod. LLC, No. 22 CV 551, 2023 WL 2974231, at *4 (E.D.N.Y. Apr. 17, 2023) (finding sole stockholder of corporation personally liable for debt to plaintiffs); Higueral Produce, 2019 WL 5694079, at *6 (finding the individual

defendant liable under PACA for the corporate defendant's violation of its fiduciary duties based on plaintiff's allegations that the individual defendant was in a position of control over the PACA trust assets and dissipated the PACA trust's assets); Double Green Produce, Inc. v. Forum Supermarket Inc., 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (finding that personal liability was established by plaintiff's allegations that defendant was in a position of control over the PACA trust assets and had dissipated the trust's assets); Mission Produce, Inc. v. AP Royal Product, Inc., No. 16 CV 7015, 2017 WL 2274972, at *2 (E.D.N.Y. May 24, 2017) ("[A]llegations in the complaint as to the individual [defendant's] control of the business are sufficient to impose liability."); Bronia, Inc. v. Ho, 873 F. Supp. 854 (S.D.N.Y. 1995) (where produce wholesaler had surrendered PACA trust assets by filing bankruptcy petition and placing any existing trust assets in control of Chapter 7 trustee, wholesaler's sole shareholder, officer and director breached his obligation to keep those assets freely available for satisfying wholesaler's obligations to sellers and was thus personally liable to sellers).

Third, the transactions at issue occurred in interstate commerce. PACA defines "interstate or foreign commerce" as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(3). Courts interpret the definition of "interstate commerce" broadly. See Maspeth Trading, Inc. v. New A & N Food Market, Inc., No. 13 CV 6454, 2014 WL 3762694, at *5 (E.D.N.Y. June 10, 2014) ("[I]n keeping with the Supreme Court's broad definition of interstate commerce, even purely intrastate transactions may be subject to the PACA's provisions if they are part of the usual stream of commerce that includes other interstate transactions.") Plaintiff alleges that the goods were sold and delivered in interstate commerce.

(Compl. ¶ 5; Affirmation of Danny Lo in Support of Request for Default Judgment, dated Feb. 16, 2024 ("Lo Aff."), Dkt. No. 14-2, ¶ 3.)

Fourth, Bally Produce, the seller, has not received full payment for the produce. Plaintiff alleges that defendant has failed to pay for the goods and presently owes plaintiff $52,057.40.  (See Compl. ¶¶ 6, 10-11, 13, 15; Affirmation of Bruce Levinson, Esq., dated Feb. 16, 2024 ("Levinson Aff."), Dkt. No. 14-1, ¶ 6; Lo Aff. ¶ 3.)

Fifth, plaintiff preserved its statutory trust rights.  PACA allows a seller to preserve its trust rights by providing written notice to the dealer within thirty days of when payment is due, or by including a printed statement on its billing or invoice statements.  7 U.S.C. § 499e(c)(3)-(4).  Plaintiff alleges that it "preserved its interest in the PACA trust in the aggregate amount of $52,057.40 by sending invoices to Defendants since the creation of the trust."  (Compl. ¶ 9.)  In support, plaintiff submitted invoices for the relevant sales of produce to defendant, and all of the invoices contain language in a footnote explaining that "[t]he seller of these commodities retains a trust claim over these commodities[.]"  (See Invoices.)  Accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, as this court must, I find that plaintiff has demonstrated a violation of Section 499e(c).

C.  Damages

Plaintiff seeks $52,057.40 for the unpaid produce, interest from January 25, 2022 at the rate of 18% per annum, attorney's fees, and costs.  (Compl. at 5; Levinson Aff. ¶ 6; Lo Aff. ¶ 3.)[3]  On a motion for default judgment, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of

---

[3] Additionally, plaintiff originally sought $400 for bounced checks, but appears to have abandoned that claim as no reference to it is made in the motion for default judgment or accompanying submissions.

damages." Greyhound Exhibitgroup, 973 F.2d at 158. "[A]lthough the default establishes a

defendant's liability, unless the amount of damages is certain, the court is required to make an

independent determination of the sum to be awarded." Griffiths v. Francillon, No. 10 CV 3101,

2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted).

1. Principal Amount

Danny Lo, plaintiff's officer, declares that defendant has failed to pay for produce

purchased by New Ming Inc. in the amount of $52,057.40. (Lo Aff. ¶ 3.) In support, plaintiff

submits copies of invoices and account statements reflecting all sums due from defendant. (See

Invoices.) The invoices, which are dated between January 25, 2022 and February 18, 2022,

reflect the quantity and price of goods sold. (Id.) The court's own calculation of the sums of

both invoices amounts to $52,057.40. Therefore, I respectfully recommend that the court award

plaintiff $52,057.40 for the unpaid produce sold to defendant between January 25, 2022 and

February 18, 2022. See Double Green Produce, Inc., 387 F. Supp. 3d at 272 (relying upon

invoices submitted as exhibits to determine damages); Hop Hing Produces Inc. v. X & L

Supermarket, Inc., No. 12 CV 1401, 2013 WL 1232919, at *8 (E.D.N.Y. Mar. 4, 2013), report &

recommendation adopted, 2013 WL 1232948 (E.D.N.Y. Mar. 26, 2013) (same).

2. Interest

In addition to the outstanding balance on the invoices, plaintiff seeks contractual

pre-judgment interest up to the date of judgment. "District courts routinely enforce contractual

prejudgment interest provisions under PACA." Double Green Produce, Inc., 387 F. Supp. 3d at

272. "While PACA does not itself establish a right to interest and collection costs, courts have

found that the purchaser is required to pay such items when the parties' contract so provides, and

thus, in such a case, the interest and collection costs become subject to the PACA trust together

11

with the principal debt." G & P Warehouse, Inc., 2016 WL 5802747, at *7 (internal quotation

marks and citations omitted).  Because plaintiff's invoices include the term of added interest at a

rate of 1.5% per month on untimely payments, it has established its right to such damages.  See,

e.g., S. Katzman Produce, 2018 WL 6437058, at *5 (finding a contractual interest rate of 18%

reasonable); Double Green Produce, Inc., 387 F. Supp. 3d at 272 (same).  Accordingly, I

recommend that plaintiff be awarded pre-judgment interest from January 25, 2022 at the rate of

18% per annum or 1.5% per month.

### 3.   Attorney's Fees and Costs

Plaintiff seeks $6,051.25 in attorney's fees for 11.75 hours of work performed by

attorney Bruce Levinson and $587.98 in costs.  (See Supp. Aff. ¶ 5; Time Records, attached as

Ex. B to the Supp. Aff., Dkt. No. 15-2.)[4]  The Second Circuit has confirmed that, "where the

parties' contracts include a right to [reasonable] attorneys' fees, they can be awarded as 'sums

owing in connection with' perishable commodities transactions under PACA."  Coosemans

Specialties, 485 F.3d at 709 (citations omitted).  Here, plaintiff's invoices state that "attorney

fees necessary to collect any balance due hereunder shall be considered sums owing in

connection with this transaction under the PACA trust."  (Invoices.)  Furthermore, the guaranty

signed by defendant indicates that plaintiff "shall be entitled to fees and expenses incurred,

including, without limitation, reasonable attorneys' fees and disbursements in connection

---

[4] Plaintiff's counsel indicates that he believes he "will need to devote another two hours of time
to this case, including review, docketing, and service of the judgment, telephone calls and
correspondence with my client, and reviewing communications from the Court.  This will add
$1,030.00 to plaintiff's legal fees, creating total fees for which defendant should be responsible
to $7,669.23."  (Supp. Aff. ¶ 6.)  The court cannot award fees for which there are no supporting
time records.  Accordingly, I recommend denying the request for an additional $1,030 in fees at
this time.

therewith." (Guaranty.)  Therefore, I find that plaintiff is entitled to recover its reasonable attorney's fees and costs.

Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam).  Plaintiff has satisfied this requirement.  (See Time Records.)  The court next assesses whether plaintiff's counsel requests a reasonable hourly rate.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case."  Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Mr. Levinson has over twenty years of experience working on PACA litigation and requests an hourly rate of $515.  (Supp. Aff. ¶ 4.)  "Recent opinions from the Eastern District

13

of New York have determined that reasonable hourly rates in this district are approximately

$300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per

hour for junior associates." Ryeco, LLC v. Legend Produce Inc., No. 20 CV 4044, 2021 WL

2742873, at *10 (E.D.N.Y. May 24, 2021), report and recommendation adopted, 2021 WL

2741605 (E.D.N.Y. July 1, 2021) (quoting Higueral Produce, Inc., 2019 WL 5694079, at *12

(collecting cases)); see also Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc., No. 23 CV 8001,

2024 WL 1914347, at *9 (E.D.N.Y. May 1, 2024) ("the Court finds that a range of $400.00 to

$450.00 per hour for partners, $300.00 per hour for associates, and $100.00 per hour for

paralegals are [the] hourly rates that should apply here.") (collecting cases). "Additionally, the

Court has held that an increase of attorney's fees rates may be warranted with the passage of

time." Ryeco, LLC, 2021 WL 2742873, at *10 (citing cases). The rate sought by plaintiff's

counsel is not reasonable in light of the prevailing market.

   Although Mr. Levinson has considerable experience as a PACA practitioner,

courts in this district have not authorized an hourly rate exceeding $450 per hour. See, e.g., Hop

Hing Produces Inc., 2013 WL 1232919, at *6 (recommending an hourly rate of $375 for Mr.

Levison and acknowledging that the rate was at "the high end of the range for partners in this

field in this district"); see also Sung v. Top Sys. Alarm Inc., No. 21 CV 2446, 2024 WL

1959072, at *6 (E.D.N.Y. May 4, 2024) (finding $400 to be a reasonable hourly rate for name

partner with specialized experience). Additionally, the nature of the work in this case—a default

judgment based on fairly simple facts—"was not sufficiently complex or difficult to litigate as to

justify a rate at the high end of the range of fees typically awarded." John v. DeMaio, No. 15 CV

6094, 2016 WL 7469862, at *7 (E.D.N.Y. Sept. 29, 2016), report and recommendation adopted,

2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016). Therefore, I find that Mr. Levinson's requested

rate of $515 requires adjustment.  Given Mr. Levinson's level of experience, prior court awards

for Mr. Levinson's fees in this district, and the non-complex nature of the case, I recommend that

Mr. Levinson's hourly rate be adjusted to $425.  See, e.g., Marchella of NY Inc., 2023 WL

2974231, at *4 (awarding hourly rate of $425 to partner with significant specialized experience

in PACA case); Ryeco, LLC, 2021 WL 2742873, at *10 (same).

        The court next looks to the reasonableness of the number of hours billed.  To

determine the reasonableness of the hours spent on the litigation, the court must make "a

conscientious and detailed inquiry into the validity of the representations that a certain number of

hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10

CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134).

The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney

would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96,

99 (2d Cir. 1992)).  Mr. Levinson spent a total of 11.75 hours on the case.  (See Invoices.)

Having reviewed the hours and time records submitted, I recommend that the hours be reduced

slightly to exclude 1.25 hours spent specifically pursuing claims against dismissed party Long

Deng.  "Long Deng was . . . dropped from this lawsuit when sufficient proof was provided to

[plaintiff's counsel] that he was not responsible for the debt."  (Supp. Aff. ¶ 2.)  "A district court

has discretion to allocate the fee award between responsible parties at its discretion where the

claims against the defendants are separate and distinct or where culpability is significantly

unequal."  Hop Hing Produces Inc., 2013 WL 1232919, at *7 (reducing number of recoverable

hours where time entries reflected work expended on matters related to non-party).

        Only defendant Ming Zhe Zhang's liability for breach of the PACA trust,

plaintiff's unpaid invoices, and related contractual sums has been established by his default.  On

the other hand, Long Deng's liability has not been established, either legally or factually.

Therefore, I recommend that plaintiff's number of recoverable hours be reduced to 10.5.  See,

e.g., E. Armata, Inc. v. E. End Produce, Inc., No. 15 CV 44, 2015 WL 10457210, at *5

(E.D.N.Y. Jan. 7, 2015), report and recommendation adopted, 2016 WL 917935 (E.D.N.Y. Mar.

9, 2016) (finding 13.05 hours a reasonable amount in a PACA default judgment case).

Accordingly, I respectfully recommend that plaintiff be awarded $4,462.50 in attorney's fees.

Plaintiff additionally requests compensation for $587.98 in costs, representing

$402 for this court's filing fee, $148 in service of process fees, $24.98 in postage fees, and $0.30

in photocopying fees.  (See Invoices.)  "Ordinarily, plaintiffs may recover costs relating to filing

fees, process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp.,

No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation

omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see

also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Accordingly, I find

$587.98 to be reasonable out-of-pocket expenses.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that a default judgment be

entered against defendant and that plaintiff be awarded $57,107.88 in total, representing

$52,057.40 in unpaid invoices and $5,050.48 in attorney's fees and costs.  I further recommend

that plaintiff be awarded pre-judgment interest at a rate of 18% per annum.  Plaintiff is directed

to serve a copy of this Report and Recommendation on defendant by first-class mail, and to file

proof of service with the court.  Any objections to this Report and Recommendation must be

filed electronically within fourteen (14) days.  Failure to file objections within the specified time

may waive a right to appeal the district court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P.

72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated:  Brooklyn, New York
       June 11, 2024